UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS GILBERT LAW,<br>Plaintiff,<br>v.<br>CARLA CORTES, et al.,<br>Defendants. | Case No. 24-cv-07816-RFL<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 28, 34, 47 |

Carlos Gilbert Law, who is proceeding without the benefit of counsel, initiated this Section 1983 suit against four parole agents whom he claims arrested him in retaliation for filing a lawsuit against another parole agent. Both Law and the parole agents moved for summary judgment. The parole agents have presented undisputed evidence that they reasonably believed Law made criminal threats, in violation of the terms of his parole. Because this is fatal to both Law's First and Fourth Amendment claims of retaliatory arrest, Defendants' motion for summary judgment is **GRANTED**, and Plaintiff's motions are **DENIED**.

## I. BACKGROUND

The following facts are undisputed unless stated otherwise. Law is a parolee who was previously supervised by Agent Chu. (Dkt. No. 47-3 ("Hinojosa Decl.") ¶ 7.) He filed a lawsuit against Agents Chu and Muniz, alleging that they had sexually abused him while he was under

their supervision. (Dkt. No. 34 ("Law Decl.") at 2.)[1] On June 3, 2024, the U.S. Marshals served the complaint and summons on the San Francisco Parole Office. (Hinojosa Decl. ¶ 3.) Agent Hinojosa, who was supervising both Chu and Muniz, passed the documents to them but did not read them. (*Id.*)

On June 13, Parole Headquarters staff sent Hinojosa an email describing a phone call they had received from a caller who made threats against Chu and Muniz. (*Id.* ¶ 4.) The caller described himself as Law's uncle and "alleged that Agents Chu and Muniz had sexually abused [Law]." (*Id.*) "The uncle put himself in the place of [Law] when describing the allegations of sexual assault." (*Id.*) The "uncle" threatened that he and Law would stab Chu and Muniz if the California Department of Corrections and Rehabilitation "did not stop them from harassing [Law]." (*Id.*) The uncle also stated, "Nobody hurts [my] nephew without the streets taking care of the problem, do you hear me?" (*Id.*) The call came from the same phone number that Law had registered with the parole office as his own. (*Id.*)

Hinojosa informed Chu and Muniz of the threat "so they could take extra precautions to protect themselves." (*Id.* ¶ 7.) She then decided to take three other agents—Cortes, Hunter, and Ebuen—to Law's home to investigate the phone call as well as Law's sexual assault allegations. (*Id.* ¶ 8.) Before leaving, she reviewed Law's parole terms, which required him to submit to searches of his cell phone and to refrain from using any fictitious names. (*Id.* ¶ 11.)

The parties agree that when the agents arrived, Hinojosa attempted to question Law about his sexual abuse allegations against Chu and Muniz, but Law refused to answer these questions. (*Id.* at ¶ 13; Law Decl. at 2.) Their account of what happened next diverges. Hinojosa states that

---

[1] Law characterized this filing as both a motion for summary judgment and an affidavit and signed it under penalty of perjury.

she began to question Law about the threatening phone call. She asked him if his uncle was with him at the time of the call, and he denied it. (Hinojosa Dec. ¶ 14.) She then asked to see his phone, and he provided it and told her his phone number, which matched the number that made the threatening call. (*Id.*) Hinojosa then asked for his PIN so she could unlock the phone and check the call log. (*Id.*) Law initially refused, but acquiesced when Hinojosa threatened to arrest him for failing to follow her instructions. (*Id.* ¶¶ 14-15.)

Hinojosa confirmed that two calls were made from Law's phone to Parole Headquarters at the time of the threatening call. (*Id.* ¶ 15.) Hinojosa "asked [Law] why he called Parole Headquarters twice, and he stated because they did not answer the first time." (*Id.*) Hinojosa then asked directly whether Law made the threats, and he denied it. (*Id.*) He refused to provide the name of his uncle. (*Id.* ¶ 16.) When Hinojosa informed him she would "have to assume he made the calls," Law responded that his uncle was named "Sucka Duckin" or "Herm." (*Id.*) Hinojosa called a contact named Herm, who stated he was a security officer at a club and that Law sometimes visited him. (*Id.* ¶ 17.) Herm denied making any threatening calls (*Id.*)

Following her investigation, Hinojosa arrested Law on suspicion of making criminal threats and began the process of revoking his parole. (*Id.* ¶ 18.) Hinojosa states in her declaration that she also arrested Law for failing to comply with instructions by not opening his phone. (*Id.*) From the reporter's transcript of Law's criminal plea proceedings, which Defendants attached to their motion, it does not appear that Law was held on that alleged parole violation. (Dkt. No. 47-1 at 57.) Rather, as part of a negotiated disposition, the Superior Court amended the petition for parole revocation to add an allegation of failing to follow instructions. (*Id.*) Law then admitted to that parole violation. (*Id.* at 61.) The plea agreement required him to complete a reentry court program and allowed him to withdraw his admission if successful. (*Id.*

at 62.) Law completed the program, withdrew his admission, and was discharged from parole. (*Id*. at 67-68.) Law never admitted to making criminal threats, and the State dismissed that charge without a probable cause hearing. (*Id*. at 60, 63; Dkt. No. 47 at 13.)

Law's version of events is that when he opened the door to the agents, "they ordered me to sit down and surrounded me and went to asking me all kind of questions." (Dkt. No. 47-1 at 30.) This included questions about his sexual assault allegations, which he did not want to answer. While Hinojosa and Cortes interrogated him, the two other agents began "tearing [his] room up." (*Id*. at 34, 38.) They did not find any contraband during their search of the room. (*Id*.) Hinojosa then asked to see Law's phone, and Law complied. (Dkt. No. 51 at 2.). Law denies that he ever refused to open his phone for Hinojosa. (*Id*.) Following his interaction with the agents, they arrested him solely for making criminal threats in violation of Penal Code Section 422. (*Id*.) Law denies that he made the threatening phone call. (*Id*.) Law spent forty days in the county jail as a result of his arrest. (Dkt. No. 47-1 at 43.)

Law subsequently filed this suit alleging that the arrest was retaliatory and violated his constitutional rights. (Dkt. No. 1.) The Court issued a screening order directing the U.S. Marshals to serve the complaint on Defendants. (Dkt. No. 9.) Defendants filed a motion to dismiss, which the Court granted. (Dkt. No. 20.) Law filed a First Amended Complaint, which is now the operative complaint. (Dkt. No. 21.)[2] The Court granted in part and denied in part Defendants' second motion to dismiss, holding Law had stated a claim under the First and Fourth Amendments and dismissing other claims. (Dkt. No. 25.) The parties now cross move for summary judgment. (Dkt. Nos. 28, 34, 47.)

## II. LEGAL STANDARD

[2] Law erroneously titled this complaint "Second Amended Complaint."

Summary judgment is proper where the pleadings, discovery, and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying the portions of the pleadings, discovery, and affidavits that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party meets its initial burden, the nonmoving party must "go beyond the pleadings" and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id*. at 324. The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation omitted). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotation omitted).

In a Section 1983 suit where the defendants have asserted the defense of qualified

immunity, the plaintiff must show not only that there is a material dispute of fact as to the constitutionality of the defendants' actions, but also that the right the defendants violated was clearly established at the time of their misconduct. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). The Court has discretion over whether it will consider the constitutional question or the clearly established question first. *Id.* at 236.

## III. ANALYSIS

Law's First and Fourth Amendment claims both fail because there is no genuine dispute over whether the parole agents had reasonable suspicion that Law made a criminal threat. Thus, the agents could have constitutionally arrested him on that charge.

Under the Fourth Amendment, a warrantless arrest is constitutionally valid so long as it is based on probable cause that the arrestee committed a crime. *D.C. v. Wesby*, 583 U.S. 48, 56-57 (2018). "Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *Id.* at 54 n.2.[3] It is irrelevant whether the officer was subjectively motivated by a desire to retaliate against the arrestee. *Lee v. Gregory*, 363 F.3d 931, 935 (9th Cir. 2004). Where the arrestee is on parole, the Fourth Amendment only requires that the arresting officer had reasonable suspicion of either a crime or a violation of parole terms. *United States v. Butcher*, 926 F.2d 811, 814 (9th Cir. 1991); *United States v. Rabb*, 752 F.2d 1320, 1324 (9th Cir.

[3] The so-called "any crime" rule does not apply to a Fourth Amendment malicious prosecution claim, meaning that even if the arresting officer had probable cause to arrest for one offense, the plaintiff may still bring suit to challenge their prolonged detention on a charge the officer fabricated. *Chiaverini v. City of Napoleon, Ohio,* 602 U.S. 556, 558-59, 563 (2024). Law's operative complaint states that he is challenging his "false arrest" and does not appear to raise a claim of malicious prosecution. (Dkt. No. 21 at 4). However, even if the Court analyzed his Fourth Amendment claim under the malicious prosecution framework, it would not survive summary judgment, because there is no dispute of fact as to whether the agents had reasonable suspicion to arrest Law for the criminal threats charge he was ultimately held on.

1984) ("We conclude that if a parole officer reasonably believes a parolee is in violation of his parole, the officer may arrest the parolee.")

The reasonable suspicion standard is met where the officer knew of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]" the officer's actions. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Reasonable suspicion requires more than a mere "hunch" but less than probable cause. *Id.* at 27. In the context of a stop or parole arrest, the officer must have reason to suspect a violation of the law or terms of supervision. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014); *See also Rabb*, 752 F.2d at 1324. However, because the guiding principle is reasonableness, the officer need not be able to point to specific, articulable facts with respect to every element of the crime. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 472 (9th Cir. 2007) (articulating this rule with respect to the heightened probable cause standard.)

The viability of a First Amendment retaliatory arrest claim likewise turns on whether the arresting officers had probable cause or, in this case, reasonable suspicion. The First Amendment protects the right to pursue civil litigation. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). An arrest in retaliation for that protected expression violates the First Amendment. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). However, to establish that the arrest was truly retaliatory, the plaintiff must show that the officer lacked probable cause. *Id.* at 402. Because a parole agent may arrest a parolee based on reasonable suspicion, the plaintiff in this case must plead and prove an absence of reasonable suspicion. *See id.*

Here, Hinojosa had reasonable suspicion that Law made a criminal threat. There are five elements of a criminal threat charge under California law:

> "(1) [T]hat the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat

> 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances."

*In re George T.*, 33 Cal. 4th 620, 630 (Cal. 2004) (citations omitted). "The use of the word 'so' indicates that unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim." *People v. Bolin*, 18 Cal. 4th 297, 340 (Cal. 1998) (internal quotation omitted).

The parole agents received an email stating that someone calling from Law's phone number threatened to stab Chu and Muniz if they continued their sexual abuse. Law disputes that he made this phone call. However, the arrest is constitutional regardless so long as the agents had reason to believe (1) that Law was the caller, and (2) that the threat was proscribed by Section 422. On the first point, Law has failed to produce any evidence to rebut the parole agents' reasons to suspect him, including that the call came from his phone and that he made several incriminatory statements when Hinojosa asked him about it.

The second point is a closer call. The threats appear conditioned on Chu and Muniz continuing their alleged sexual abuse of Law. However, the undisputed evidence shows that the caller described the alleged sexual assault as needing to be stopped, from which a reasonable officer could infer that the caller believed it to be ongoing. As such, Hinojosa had reason to suspect that the threat to stab Chu and Muniz or have the "streets tak[e] care of the problem" was immediate, based on the caller's description. Also, though there is not direct evidence about Chu and Muniz's reaction to the threat, Hinojosa had reason to suspect that they would be in

immediate and sustained fear, given the nature of the threat and the emotionally charged nature of the accusations against them. Indeed, Hinojosa undisputedly communicated the threat to Chu and Muniz to alert them to the situation so that they could protect themselves. There thus is no genuine dispute that Hinojosa's arrest was based on specific, articulable facts suggesting Law had made a criminal threat. The existence of reasonable suspicion with respect to the criminal threats charge defeats Law's First and Fourth Amendment claims.[4]

**IT IS SO ORDERED.**

Dated: November 13, 2026

RITA F. LIN
United States District Judge

[4] This order therefore does not reach the remainder of Defendants' arguments for summary judgment.